UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

UNITED STATES OF AMERICA,                        Criminal No. 07-219(3) JNE/AJB

                 Plaintiff,

v.                                      **REPORT AND RECOMMENDATION**

JOSE ALFREDO RUIZ,

                 Defendant.

David Steinkamp, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

Lee R. Johnson, Esq., for the defendant, Jose Alfredo Ruiz.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on February 22, 2008, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The court issued an Order on Motions, dated February 25, 2008, reserving defendant's motions for suppression of evidence and severance for submission to the district court on report and recommendation.

Based upon the file and documents contained therein, along with exhibits received at hearing, the magistrate judge makes the following:

**FINDINGS**

**Search Warrants**

On January 29, 2008, United States Magistrate Judge Franklin L. Noel issued separate warrants to search a particularly described business location in St. Paul, Minnesota (Hearing Exh. No.

4), and a particularly described residence in Mendota Heights, Minnesota (Hearing Exh. No. 5). Identical affidavits were submitted in support of the warrant applications and defendant Jose Alfredo Ruiz is therein identified as the owner of the business to be searched and the owner of the residence to be searched.  The search warrants identified the same objects of the respective warrants as being cell phones and related documents; items showing constructive possession of the premises; controlled substances; documents relating to drug sales, including proceeds; address and telephone books and electronic storage devices; documents relating to money transfer and concealment; money and financial instruments; drug packaging supplies; documents showing constructive possession of contraband; documents relating to law enforcement activities; cell phone records; and any lockbox or safes, including the contents.  The warrants were issued on the basis of probable cause evidence contained in the affidavits of FBI Special Agent Julia A. Hunter.  Evidence contained in the affidavits included information provided by confidential reliable informants, information provided by a cooperating defendant, evidence obtained through execution of search warrants, information obtained by interception of telephone conversations pursuant to wiretap warrants, and physical surveillance information.  In addition, the affiant cites her law enforcement experience, information obtained from other officers and agencies, and her personal participation in the investigation, as well as success in obtaining evidence through previous residence searches in this investigation, in support of probable cause to search the Mendota Heights residence.

**Electronic Surveillance**

The magistrate judge hereby adopts the Findings with respect to the wiretap suppression motion by a co-defendant in this case as stated in the Report and Recommendation to the

district court dated October 30, 2007, and adopted by the district court in an Order dated December 6, 2007.  The court finds:[1]

> **Wiretap Applications, Authorizations, and Procedures.**
> On April 12, 2007, an Assistant United States Attorney for the District of Minnesota submitted an application for an order authorizing the interception of wire communications to United States District Court Chief Judge James M. Rosenbaum (Hearing Exh. No. 1).[2]  The wiretap authorization was sought pursuant to 18 U.S.C. § 2518 and was requested as part of an FBI investigation into suspected drug distribution and money laundering activities by specifically identified individuals.  The co-defendant[] whose [motion is] now before the court [was an] expressly named target[] of the wiretap investigation.[3] The interception targets were believed to be involved in the possession and distribution of methamphetamine and cocaine into Minnesota.  The wiretap application and order each recite the suspected statutory violations relating to the investigation.  In addition, the application contains a description of the application procedures which have been followed pursuant to the requirements of 18 U.S.C. § 2516 and seeks permission to conduct telephone surveillance consistent with provisions of 18 U.S.C. §2518.  The application further identifies the individual targets of the proposed surveillance and generally asserts the existence of probable cause as stated with particularity in an attached and incorporated affidavit of FBI Special Agent Julie A. Hunter.
>
> The April 12, 2007, application requested authorization to intercept calls to and from cellular telephone number (612) 685-5456, uniform mobile fleet identifier number 104*21*31213 and international

---

[1] The portion of the previous Findings designated "Alternative Investigative Techniques" is directly pertinent to the wiretap warrant challenge on "necessity" that is presently before the court.  The previous report and recommendation wiretap findings are stated in entirety to provide introduction and context.

[2] Application for Interception (with attachments), Order Authorizing the Interception, Sealing Application, and Sealing Order.

[3] Co-defendant Victor Arriaga Valverde [did] not challenge the electronic surveillance, and co-defendant Jose Dolores Almada-Cota [did] not expressly acknowledge his participation in any intercepted calls.

mobile station identity number 316010001766190, a Nextel/Sprint cell telephone assigned to Juan A. Ruiz, Minneapolis, Minnesota, and used by Jose Alfredo Ruiz, aka Primo  (Target Telephone #1). Authorization was granted by Chief Judge Rosenbaum on April 12, 2007, and the Court's Order permitted interceptions for a period of 30 days commencing on the date of first interception, but not more than 10 days after issuance of the Order.  The Order further provided that wiretaps be conducted in a manner that minimized the interception of communications not pertinent to the investigation and that interim reports indicating progress and need for continued interception be submitted to the Court on ten-day intervals.  Periodic meetings with the district court were held and interim progress reports pursuant to the Order were timely provided to the Court.  The wiretap authorizing order on telephone number (612) 685-5456 (Target Telephone #1) was allowed to expire after 30 days (although intercept authorization was thereafter renewed pursuant to application and authorizing order issued on May 14, 2007.)   The authorizing order expired and interceptions ceased on May 12, 2007.  DVD recordings of all intercepted conversations were sealed within ten days after wiretapping ceased pursuant to Sealing Application and Sealing Order issued May 15, 2007.

Another Assistant United States Attorney for the District of Minnesota submitted a second application for an order authorizing the interception of wire communications to United States District Court Chief Judge James M. Rosenbaum on May 14, 2007.  This wiretap order was requested on the basis of the same statutory authority and as part of the same investigation as the prior April 12, 2007, Order.  The May 14, 2007, application also asserts the existence of probable cause as stated with particularity in an attached affidavit of FBI Special Agent Julie Hunter.  The second application identifies the same individuals as targets of the proposed surveillance, though some target individuals are added.

The May 14, 2007, application (Hearing Exh. No. 4) again requested authorization to intercept calls to and from cellular telephone number (612) 685-5456, uniform mobile fleet identifier number 104*21*31213 and international mobile station identity number 316010001766190, a Nextel/Sprint cell telephone assigned to Juan A. Ruiz, Minneapolis, Minnesota, and used by Jose Alfredo Ruiz, aka

4

Primo (Target Telephone #1).[4] Authorization was granted by Chief Judge Rosenbaum on May 14, 2007, and the Court's Order permitted interceptions for a period of 30 days commencing on the date of first interception, but not more than 10 days after issuance of the Order. The Order further provided that wiretaps be conducted in a manner that minimized the interception of communications not pertinent to the investigation and that interim reports describing progress to date and the need for continued interceptions be submitted to the Court on ten day intervals. Interim reports were provided as required and the Order authorizing a wiretap on the target telephone number was not extended beyond the 30 day period ending on June 12, 2007. Again, DVD recordings of all intercepted conversations were sealed within ten days after wiretapping pursuant to this warrant ceased pursuant to Sealing Application and Sealing Order issued June 12, 2007.

Both of the above-described intercept applications were separately authorized by a specifically designated Deputy Assistant Attorney General in the Criminal Division of the United States Department of Justice. The interception applications requested wiretap permission only until attainment of the authorized objectives and in no event more than thirty days beyond time of commencement. The target phone was not monitored in excess of the thirty day time limitation as prescribed by the applicable Order Authorizing the Interception of Wire Communications. The applications described attainment objectives as the interception of communications which reveal the manner and scope in which target telephones are used to facilitate the possession and distribution of drugs, along with information indicating the location of contraband and distribution activities, the nature and scope of conspiracy, the manner of transporting drugs, and the disposition of proceeds.

**Minimization.** Prior to commencing telephone interceptions in this investigation, the monitors, law enforcement agents, contract agents, and interpreters[5] were given instructions regarding rules and standards of minimization. Minimization procedures are intended to

---

[4] Application for Interception (with attachments), Order Authorizing the Interception, Sealing Application, and Sealing Order.

[5] Agents anticipated that many of the intercepted phone conversations would be in the Spanish language.

prevent unnecessary monitoring of innocent conversations by requiring monitors to determine the discussion's relevance to the investigation within the first two minutes of the call. The monitors were required to immediately cease surveillance of apparently non-pertinent calls, but were permitted to make periodic spot checks to determine whether a call may have become pertinent. A minimization memorandum (Hearing Exh. No. 3) was prepared for review by telephone monitors and agents. Personnel who began participating in surveillance after initial commencement of wiretapping were given minimization instructions on an individual basis. All surveillance personnel were required to read the minimization memorandum, and to thoroughly review the wiretap application, supporting affidavit, and authorizing order.

During the entire period of monitoring pursuant to both the first and second wiretap authorizations, a total of 5965 calls were intercepted on the target telephone,(612) 685-5456 (Hearing Exh. No. 14). 361 calls were deemed pertinent; 766 calls were over 2 minutes in duration; 534 calls were minimized; 341 calls over 2 minutes in duration were minimized; and 161 calls longer that 2 minutes in duration were pertinent. Wiretap subjects sometimes used code words and coded language to disguise the substance of their conversations.

**Alternative Investigative Techniques.** The affidavits of FBI Special Agent Julie Hunter that were submitted in support of the two wiretap applications both described various conventional investigative techniques which were used in the investigation prior to submitting the particular application for wiretap authorization. Investigation methods, information sources, and incidents that were exploited by the affiant and other investigators included cooperating defendants and confidential informants, physical surveillance, search warrants, pen registers, trash searches, and review of financial records of suspects. In addition, the May 14, 2007, affidavit of FBI Special Agent Julie Hunter cited the prior Title III wiretap in this case and referenced information obtained pursuant to previous intercepts. The conventional techniques and previous wiretap had not proven to be entirely successful with regard to providing evidence on the full scope of the suspected illegal drug organization, exposing the identities and roles of persons involved in the suspected drug business and the organization's period of operation, and revealing revenues and the disposition of money received or the existence of assets held in fictitious names. Cooperating individuals and

6

informants had provided some information, but the evidence was not considered sufficiently specific to obtain indictments or convictions, and informants had not been able to infiltrate the higher organizational levels. In addition, those individuals feared physical retaliation and were therefore averse to testifying.  In particular, agents felt that a certain informant was not sufficiently trusted within the drug organization to be given detailed information.  The ability to use undercover agents was limited because the organization was small and tight-knit.  Surveillance was conducted and had produced some information, but did not allow the immediate physical presence necessary to see or hear conversations actually taking place and subjects were sensitive to surveillance and used counter-surveillance tactics.  Furthermore, it was feared that continued surveillance might compromise the investigation and the safety of an informant.  Search warrants were executed but were not entirely effective because evidence obtained was insufficiently specific as to the conduct and scope of the conspiracy, and there was substantial difficulty in isolating particular locations to be searched and simultaneously executing multiple warrants.  Pen registers were used and provided circumstantial evidence of contacts, but did not provide direct evidence on the identities of callers or the substance of the communications.  Trash searches were conducted, but with limited results, particularly with respect to drug quantities; grand jury subpoenas were not considered a useful investigative tool because of the probability that subject interviews and use of subpoenas would compromise the broader investigation; consensual recordings were not used, largely because of the reluctance of informants; and review of financial records and transactions had been conducted but would not provide means of proving drug trafficking.  With respect to the Affidavit of Julie Hunter in support of the second wiretap authorization, the affiant cited evidence obtained through the prior electronic surveillance, but indicated that the requested additional electronic surveillance was necessary to fully develop the necessary evidence of violations and persons involved in the offenses, known and unknown.

Based upon the foregoing Findings, the magistrate judge makes the following:

**CONCLUSIONS**

**Severance**

Pretrial severance of this action for separate trials of co-defendants is not required.

Defendant Jose Alfredo Ruiz has not made the requisite showing in this case that severance is necessary to avoid risk of compromising any specific trial right to which a defendant is entitled or that severance is necessary to prevent the jury from making a reliable judgment as to the moving defendant's guilt or innocence.[6]

Two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of incidents constituting an offense or offenses. Fed. R. Crim. P. 8(b). There is a preference in the federal system for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 937 (1993). The co-defendants in this matter have been indicted on charges of conspiracy to distribute and possess controlled substances. Under these circumstances, the general rule in the federal system is that the co-defendants should be tried together. The court may grant a severance of defendants if it appears that a defendant is prejudiced by a joinder of defendants at trial. Fed. R. Crim. P. 14. A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S.Ct. at 938.

Defendant Jose Alfredo Ruiz offers no particularized argument and asserts no specific prejudice arising out of the likelihood that a co-defendant will argue and seek to introduce testimony exonerating himself and implicating Mr. Ruiz in charged offenses in either his initial motion or by post-hearing memorandum. The present factual record in this case offers no compelling indication as to how

---

[6] The severance issue is likely moot. Plea agreements have been filed with respect to co-defendants Jose Delores Almada-Cota and Victor Arriaga-Valverde.

this defendant is prejudiced by joinder with the other defendant in this case to the extent necessary to overcome the preference for joinder in cases of this nature.  In any event it is certainly not an extraordinary occurrence that one defendant would be pointing the finger at another, and it is not patently apparent that a jury would be unable to distinguish and apply the evidence relating to one defendant from evidence relating to other defendants.  Joinder of defendants in this case was not improper and severance is not required.

**Search Warrants**

Evidence seized pursuant to a warrant to search a particularly described business location in St. Paul, Minnesota (Hearing Exh. No. 4), and a particularly described residence located in Mendota Heights, Minnesota (Hearing Exh. No. 5) was not unlawfully obtained in violation of the defendant's constitutional rights.  The search warrants were contemporaneously issued by United States Magistrate Judge Franklin L. Noel on January 29, 2008, and their issuance was based upon separate but identical affidavits of FBI Special Agent Julia A. Hunter.  The warrants properly and sufficiently identified the locations of the respective searches and the items to be seized.  The warrant to search the St. Paul business location was supported by probable cause as stated in the pertinent affidavit, and the warrant to search the Mendota Heights residence stated sufficient evidence to establish a nexus between criminal activity and the location to be searched, and therefore also stated probable cause for a search warrant.  There is no requirement for suppression of evidence seized pursuant to either of the warrants in this matter.

Contrary to defendant's argument in support of suppression, the warrants to search defendant Jose Alfredo Ruiz's business and residence were not typical anticipatory warrants, requiring

satisfaction of a particular triggering condition prior to execution. Except to the extent that all warrants are issued on the basis of some anticipation that objects of the search will be found sometime in the future when the search is to be conducted, execution of the warrants in this instance was not predicated upon the occurrence of some particular condition or event which did not occur.[7] See United States v. Grubbs, 126 S.Ct. 1494, 1499 (2006). Consequently, the court need not determine probable cause to believe that a triggering event will occur (though such probable cause would indeed be found under circumstances in which the event was a planned controlled drug delivery to the business location). Rather, the court need only determine that there is *now* probable cause that contraband or evidence of crime *will be* on the premises. Grubbs, 126 S.Ct. at 1500. In this instance the warrant application provides abundant probable cause evidence to establish probable cause to search the business location, including substantial wiretap and informant evidence of defendant Ruiz's involvement in drug trafficking; evidence that the business location had been used for a drug transaction, though not with regard to recent years;[8] and a controlled drug delivery to the business location to take place on the same day the warrants were issued. The court finds no grounds for suppression of evidence seized pursuant to the warrant to search the business.

The same affidavit information that is submitted with respect to the warrant to search the business is also relied upon to establish probable cause to search the residence. The primary issue

---

[7] Though the warrant application suggests that defendant Ruiz's arrest was based upon the affiant's anticipation of the results of the impending search warrant execution, the court concludes that the search warrants themselves are not anticipatory in nature. (Warrant Application ¶ 46, Hearing Exh. Nos. 4 and 5). The arrest comment is not pertinent to the probable cause analysis.

[8] A cooperating defendant had been provided drugs at the business from the years 2002 to 2004 (Warrant Application ¶ 20, Hearing Exh. Nos. 4 and 5).

with regard to the house warrant is whether a nexus was established between drug activities and the location to be searched.  The government contends that the requisite nexus exists on the basis of defendant Ruiz's long involvement in drug distribution activities and the affiant's belief that some evidence of those activities, including documentary evidence of use of the wiretap target phone and evidence linking Mr. Ruiz to co-defendants, would be found in the home.  While evidence of a nexus between the residence and actual controlled substances is not highly compelling in light of the evidence that the defendant used his business location to conduct drug sales, the court concludes that the warrant does provide sufficient evidence to establish probable cause that ancillary evidence of drug-related activities, including telephone records and other documentary evidence pertinent to drug transactions, drug transportation, financing, and identification of proceeds, as well as other evidence subject to seizure under warrant, would be found at the residence.  Such evidence includes the reasonable inferences resulting from the discovery of evidence in previous residence searches in this investigation, considered in light of the affiant's experience and extensive involvement in the investigation in this matter.  The court concludes that the warrant to search the residence was supported by sufficient evidence to establish probable cause that evidence of criminal activity would be found at that location.

**Good Faith.**  In addition to determining that probable cause existed for issuance of the search warrants in this matter, the court concludes that both warrants were executed in good faith and evidence obtained pursuant to both the business and residence warrants is admissible under the Leon exception to the exclusionary rule.  United States v. Leon, 468 U.S. 897, 922-23 104 S.Ct. 3405 (1984).  "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing the affidavit or could not have harbored an

objectively reasonable belief in the existence of probable cause." United States v. Formaro, 152 F.3d at 771 n.4 (citing United States v. Fulgham, 143 F.3d. 399, 401-02 (8th Cir. 1998)(quoting Leon, 468 U.S. at 926).  See also  United States v. Hessman, 369 F.3d 1016, 1020 (2004)(citing Leon, 468 U.S. at 923).  There is no claim in this matter that the issuing judge was not neutral, and there has been no request, nor evidence presented, that would justify a hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978), to consider whether the affidavit contains deliberate or reckless misrepresentations, either by omission or misstatement.  Formano at 771.  In addition, the court now finds that the identical affidavits were certainly not so lacking that the affiant and executing officers could not have objectively and reasonably believed that probable cause existed for issuance of either the warrant to search the defendant's residence or the warrant to search the business location.  See  United States v. Carpenter, 341 F.3d 666, 670 (8th Cir. 2003)(affidavit not so lacking in indicia of a nexus between drugs and residence as to render belief in existence of probable cause entirely unreasonable).  Defendant's motion to suppress search and seizure evidence is properly denied on good faith grounds.

**Electronic Surveillance**

Defendant Jose Alfredo Ruiz has not made the required showing that the applications for electronic surveillance in this case were substantively deficient; that the wiretap surveillance as conducted in this instance did not satisfy the procedural requirements relating to the specification of offenses or identification of wiretap subjects as set forth at 18 U.S.C. 2518; that electronic surveillance was unnecessary in light of evidence already obtained and the availability of other investigative techniques; that the application and/or affidavit contained material misrepresentations; that insufficient probable cause evidence was recited; that monitors failed to minimize intercepted calls; or that

interceptions continued after attainment of objectives. Evidence obtained either directly or derivatively through interception of wire or oral communications should not be suppressed.

Mr. Ruiz specifically bases his challenge on an assertion that the application for the second (renewed) wiretap warrant did not sufficiently discuss the investigative significance of evidence obtained as a result of the initial wiretap, and therefore the application failed to establish the necessity for issuance of the renewed warrant. With respect the necessity requirement, the magistrate judge herein adopts the conclusion in the prior Report and Recommendation, dated October 30, 2007, and adopted by the district court in an Order dated December 6, 2007, that:

> **Necessity.** In addition to providing a complete statement of facts and circumstances relating to the alleged offenses, the persons involved, and the type of communications sought to be intercepted, 18 U.S.C. § 2518(1)(b), a wiretap application must contain information which will justify a determination that conventional investigative techniques have been tried and have either failed or reasonably appear to be unlikely to succeed or are too dangerous. 18 U.S.C. § 2518(1)(c) and (3)(c). United States v. Shaw, 94 F.3d 438, 441 (8th Cir. 1995). This "necessity" requirement is imposed to ensure that wiretaps are not routinely employed at the initial step in the investigation and does not dictate that all possible investigative techniques be attempted before seeking wiretap authorization. Id. at 441 (citing United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990)).
>
> The separate affidavits of FBI Special Agent Julie Hunter, submitted in support of wiretap applications (Hearing Exh. Nos. 1 and 2), each provide a thorough description of other investigative methods that had already been used or considered. The affidavits discuss the consideration and/or use of cooperating defendants and informants, undercover operations, consensual recordings, physical surveillance procedures, pen registers, search warrants, trash searches, grand jury subpoenas, and financial record reviews. In addition, the affidavits describe the successes and limitations of various investigative techniques under the circumstances of this case. The affidavits also discuss particular difficulties with respect to informant fear of retaliation

and difficulties in infiltrating the organization. In addition, the affidavits stated that surveillance had been conducted, but did not allow the immediate physical presence necessary to see or hear illegal activities actually taking place; search warrants had been executed but were not particularly effective because of difficulty in isolating appropriate locations for searches and obtaining particularized information; pen registers had been used, but did not provide direct evidence on the identities of callers or the substance of the communications; trash searches had been used but did not reveal drug quantities; grand jury subpoenas were not felt to be effective tools or might compromise the investigation in this instance; consensual recordings were not used because of the unavailability of willing informants; and financial records had been reviewed but did not provide evidence of trafficking. The wiretap was clearly not the initial step in the investigation in this case and the application and authorization are not in conflict with the "necessity" requirement. United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995). The government met its statutory obligation with respect to a statement of necessity and there is no showing that relevant affidavit statements were misleading in that regard. Defendant challenges the necessity requirement in only the most general and conclusory terms, offering no particularized explanation regarding perceived deficiencies in alternative investigation efforts. Moreover, he makes no assertion that agents had attained the investigation objectives through alternative methods or that the wiretap investigation continued after the objectives had been reached. Suppression of wiretap evidence is not justified on grounds that other investigative techniques were not sufficiently utilized or that the government failed to cease electronic surveillance upon attainment of the investigation objectives.

Defendant Jose Alfredo Ruiz's challenge to necessity is no more particularized, and no more persuasive, than that of his co-defendant. Mr. Ruiz faults the May 14, 2007, warrant renewal application on the basis of the lack of discussion regarding information obtained pursuant to the initial wiretap warrant, as well as the lack of explanation as to the sufficiency of evidence needed to accomplish the objectives of the investigation by alternative methods. The court does not share defendant's expressed disapproval of the use of boiler-plate language in the appropriate circumstances,

and finds that such circumstances warranting iteration exist in this instance.  Rather, it is the particular objection being raised that eludes the court.  Therefore, the court finds that the defendant has wholly failed to raise a particularized issue in regards to necessity and the court again concludes that the application for the renewed wiretap (Hearing Exh. No. 2) meets the statutory requirements with respect to necessity in stating that interceptions to date had not resulted in drug seizures; had not revealed the full scope of the conspiracy; and had not revealed the identity of all participants, the period of operation of the organization, revenues and disposition of money, or the identity of assets held under false names.[9]  The application also provides reasons why other particular investigative methods had not been sufficiently productive or useful.[10]  The finds that the repetition of previously used warrant application language, whether characterized a boiler-plate or otherwise, is of little consequence so long as such language remains truthful and accurate.  Defendant Ruiz now makes no assertion that agents had actually attained the investigation objectives through alternative methods; that the wiretap investigation continued after the objectives had been reached; or that the renewed wiretap authorization was not necessary to attain objectives.  Suppression of wiretap evidence is not required.

Based upon the foregoing Findings and Conclusions, the magistrate judge makes the following:

**RECOMMENDATION**

The Court **hereby recommends** that:

1. Defendant Jose Alfredo Ruiz's Motion to Sever be **denied** [Docket No. 94];

---

[9] Application for Continued Interception of Wire Communications, ¶ 23

[10] Id., ¶¶ 24-42.

      2. Defendant Jose Alfredo Ruiz's Motion to Suppress Contents of Intercepted Wire and Oral Communications be **denied** [Docket No. 96]; and

      3. Defendant Jose Alfredo Ruiz's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 97].

Dated:    March 20, 2008

                                                 s/ Arthur J. Boylan  
                                                 Arthur J. Boylan  
                                                 United States Magistrate Judge

      Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before April 3, 2008.

      Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.